UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILL YNZUNZA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. CV 07-7166-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on November 6, 2007, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 4, 2008, and July 19, 2010. Pursuant to the Court's order, the parties filed a Joint Stipulation on March 12, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 13, 1943. [Administrative Record ("AR") at 38, 63.] He has a tenth grade education, and past relevant work experience as a pre-press striper. [AR at 74, 81, 88-95, 422-27.]

Plaintiff filed his application for Disability Insurance Benefits on December 4, 2001, alleging that he has been unable to work since December 29, 2000, due to, among other things, blurred or double vision, diabetes, difficulty walking or standing, weakness, and vomiting. [AR at 63-65, 72-87.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 39-49.] A hearing was held on March 1, 2004, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 419-53.] On September 23, 2004, the ALJ issued a decision denying benefits. [AR at 18-34.] When the Appeals Council denied plaintiff's request for review of the hearing decision on July 12, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 11-14.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since the alleged onset date of disability.[1] [AR at 21, 33.] At step two, the ALJ concluded that plaintiff has the following medically determinable impairments that, in combination, are severe: "diabetes mellitus with peripheral neuropathy and retinopathy, cataracts bilaterally, hypothyroidism, hypertension, renal insufficiency, congestive heart failure, benign prostatic hypertrophy, obesity, an umbilical hernia, and a depressive disorder, not otherwise specified." [AR at 23, 33.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 24, 33.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] "to perform light work[3], avoiding exposure to unprotected heights and dangerous machinery." [AR at 33.] At step four, the ALJ concluded that plaintiff is able to perform his past relevant work. [AR at 32-33.] Accordingly, the ALJ found that plaintiff is not disabled. [AR at 33-34.]

/

/

---

[1]   The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through at least March 31, 2006. [AR at 20, 33.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider: (1) plaintiff's ability to perform his past relevant work; (2) the opinions of plaintiff's treating physician; and (3) plaintiff's credibility. [Joint Stipulation ("JS") at 4.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.   PLAINTIFF'S CREDIBILITY

At the hearing, plaintiff testified that he has the following impairments and symptoms, among others, that prevent him from being able to work: high blood pressure, headaches, nosebleeds, blackouts, neuropathy in his hands and feet, visual problems including blurry vision and sensitivity to light, difficulty urinating, hip and back pain, ankle swelling, leg cramps, anxiety, and weakness. [AR at 433-50.] Plaintiff contends that the ALJ failed to properly consider his testimony and did not provide legally sufficient reasons for rejecting his credibility. [JS at 23-28.]

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R.

§§ 404.1529(c), 416.929(c). Absent evidence showing that a claimant is malingering, the ALJ must clearly identify evidence in the record undermining the claimant's testimony to properly discredit his alleged limitations. See Dodrill, 12 F.3d at 918; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citations omitted). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the ALJ did not find that plaintiff was malingering, the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, the ALJ found that while plaintiff's "medically determinable impairments ... would reasonably be expected to cause some limitations," the extent of his alleged impairments is "not credible." [AR at 31.] Specifically, the ALJ discounted plaintiff's subjective symptoms and alleged limitations because: (1) plaintiff's subjective symptoms of dizziness, weakness, panic attacks, and need to use a cane are not fully supported by the medical evidence; (2) the medical record shows that plaintiff is not fully compliant with medical treatment and his doctor's advice and that his symptoms "fluctuate[] according to his compliance with his medication;" (3) plaintiff has failed to pursue treatment "that might lessen [his] symptom[s];" and (4) plaintiff's activities are inconsistent with his claimed limitations. [AR at 31-32.] The Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that plaintiff's failure to comply with prescribed medical treatment and follow his doctor's advice was a proper basis for finding plaintiff not fully credible.

In summarizing the medical evidence, the ALJ correctly cited numerous examples where plaintiff failed to take his medication as prescribed. [AR at 24-25, 31-32.] As the ALJ noted in the decision, the medical evidence indicates that plaintiff's blood pressure is, at times, quite high. [See, e.g., AR at 183, 358.] Despite this condition, there are numerous examples in plaintiff's treatment records indicating that plaintiff was not fully compliant with his medication [see AR at 204, 206, 207, 211, 213, 216, 219, 220, 225, 340, 341], and that plaintiff's episodes of high blood pressure corresponded with his lack of medication compliance. [Compare AR at 257 (August

2001 blood pressure ("BP") of 130/60) with AR at 213 (September 2001 BP of 166/82; reported not taking BP medication that day) and with AR at 211 (November 2001 BP of 190/98; plaintiff had been out of medication for several days); compare AR at 205 (May 2002 BP of 140/70) with AR at 203 (August 2002 BP of 180/76; reported not taking medication that day).]  Further, the ALJ noted that although plaintiff's treating physician, Dr. John K. F. de Beixedon, encouraged plaintiff to get exercise and lose weight to improve his health [AR at 28, 31, citing AR at 204, 341, 342, 380], plaintiff's treatment notes indicate that he admitted that he does not get "much exercise." [AR at 31, citing AR at 204.]  The Court further notes that plaintiff acknowledged during his hearing testimony that his physicians have recommended that he get exercise, improve his diet, and lose weight, but that he admitted he has had difficulty exercising, "it's hard to stay on" diets, he has gained weight since he stopped working, and he "just can't seem to stop the weight."  [AR at 438-39.]

        The ALJ concluded that plaintiff's failure to follow prescribed medical treatment and his doctor's recommendations undermines the credibility of plaintiff's "allegations of disabling limitations [because] if [he] is as limited as alleged ... he would follow his doctor's advice." [AR at 32.]  Plaintiff's failure to follow prescribed medical treatment and his doctor's advice is a clear and convincing reason for finding the extent of his subjective limitations not fully credible.  See 20 C.F.R. §§ 404.1530(b), 416.930(b) ("[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (noncompliance with prescribed course of treatment is a relevant consideration in assessing credibility).  Accordingly, remand is not warranted on this issue.

**B.  TREATING PHYSICIAN'S OPINION**

        Plaintiff asserts that the ALJ failed to provide sufficient reasons for rejecting the opinion of treating physician Dr. de Beixedon concerning the extent and limiting effects of plaintiff's impairments.  [JS at 13-18.]

        Dr. de Beixedon has treated plaintiff since January 3, 2001, for, among other things, malignant hypertension, diabetes, and benign prostatic hypertrophy.  [AR at 202; see also AR at

142, 199-235, 330-57, 377-404.] While plaintiff was hospitalized for treatment of congestive heart failure [see, e.g., AR at 148-51], Dr. de Beixedon wrote a letter on December 27, 2001, addressed to the Disability and Adult Programs Division of California's Department of Social Services, in which he opined that "[d]ue to the severity of [plaintiff's] illnesses, he is currently completely disabled" because "he can do no work related to walking, lifting, carrying or climbing" and "his memory has also declined" such that he is "incapable of performing work in which memory or concentration are important." [AR at 202.] On July 25, 2003, Dr. de Beixedon completed a Medical Source Statement, in which he opined that plaintiff can lift less than ten pounds occasionally and cannot lift even two pounds frequently; can stand and/or walk less than two hours in an eight-hour workday as he is "barely able to get up from an armchair;" can sit about six hours in an eight-hour workday with periodic alternations between standing and sitting; is limited in his ability to push and pull with his upper and lower extremities; is limited to occasional kneeling, crawling, and stooping and can never climb, balance, or crouch because "hip and thigh pain greatly limit his mobility;" is limited in his ability to reach, handle, finger, and feel due to neuropathy in his hands; and has visual and various environmental limitations. [AR at 330-33.]

Dr. Concepcion Enriquez, a consultative examining physician, completed two Internal Medicine Consultations in which she reported on her observations and physical examinations of plaintiff and her review of his medical records. [AR at 268-72, 358-65.] In the first Consultation, dated January 23, 2002, Dr. Enriquez noted, among other things, plaintiff's history of high blood pressure; diabetes; hypothyroidism; and chest, neck, back, hip and knee pain. [AR at 268-72.] She also indicated that during the examination, plaintiff's blood pressure was normal and his blood sugar level well controlled, but found that he exhibited symptoms of diabetic neuropathy including pain, numbness, and tingling in his feet; sensory deficit; hyperpigmentation in his lower extremities; and edema. She further noted that he had tenderness in his cervical and lumbar spine and left knee with mild decreased range of motion in his lumbosacral spine, but that he was able to balance normally and walk without assistance (although with a slight antalgic gait). [AR at 270-72.] Dr. Enriquez opined that "[b]ecause of the presence of edema, [plaintiff], most likely, can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds[,] ... stand

and/or walk with normal breaks for four hours in an eight-hour workday[, and] ... sit with normal breaks for six hours in an eight-hour day." [AR at 272.] In the second Consultation, dated December 22, 2003, Dr. Enriquez had similar findings, but noted no tenderness or limited range of motion in plaintiff's cervical, lumbar, or lumbosacral spine and no edema. [AR at 362, 364.] She opined that plaintiff "would be able to lift and/or carry 20 pounds occasionally and 10 pounds frequently[,] ... stand and/or walk for six hours total in an eight-hour workday with normal breaks[,] ... sit for six hours total in an eight-hour workday with normal breaks[,] ... push and/or pull unlimited[ly], other than as shown for lift[ing] and/or carry[ing][, and] ... should avoid exposure to unprotected heights and operation of dangerous machinery." [AR at 365.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations

omitted); Social Security Ruling[4] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The ALJ asserted in the decision that he credited Dr. Enriquez's opinion regarding plaintiff's RFC expressed in her December 22, 2003, Consultation over Dr. de Beixedon's findings. [AR at 28-29.] In doing so, the ALJ rejected Dr. de Beixedon's opinions expressed in his December 27, 2001, letter and July 25, 2003, Medical Source Statement for the following reasons, among others, that the Court finds are explicit and legitimate and supported by substantial evidence.

First, the ALJ discounted Dr. de Beixedon's opinions as unsupported by medical findings. Specifically, the ALJ found that no evidence justified the "extreme limitation" that plaintiff can lift less than two pounds frequently. [AR at 28.] He further concluded that because Dr. de Beixedon did not attribute his findings regarding plaintiff's limitations with regard to pushing, pulling, and sitting to any specific medical impairment, these findings were apparently based on plaintiff's "subjective limitations rather than objective medical evidence." [AR at 29.] An ALJ is not required to accept a medical opinion that is inadequately supported by medical findings. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount treating physicians' opinions that are conclusory, brief, unsupported by the record as a whole or by objective medical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctors' opinions because they were contained in check-off reports that did not contain any explanation of the bases for the conclusions); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). Here, although Dr. de Beixedon's treatment notes indicate that plaintiff experienced symptoms such as leg cramps [AR at 203, 212, 220, 341], weakness [AR at 205, 206, 223, 337, 342], and pain [AR at

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

203, 206, 213, 221, 336], neither Dr. de Beixedon's treatment notes nor the other medical evidence support the extent of the limitations provided in his opinions. To the contrary, Dr. de Beixedon repeatedly encouraged plaintiff to not "sit in front of [the] TV all day" [AR at 204], "stop l[y]ing in [the] chair all day" [AR at 342], and get exercise and walk around [AR at 337, 341], and described his gait as affected by only a "slight wobble with cane." [AR at 201.] Accordingly, the ALJ's rejection of Dr. de Beixedon's opinions as conclusory and unsupported by medical evidence was a specific and legitimate reason supported by substantial evidence. Lester, 81 F.3d at 830-31. Moreover, "[a] physician's opinion ... premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (internal quotations and citation omitted). Because, as explained above, the ALJ properly discounted plaintiff's credibility regarding his limitations, the ALJ also properly rejected Dr. de Beixedon's findings to the extent they were primarily based on plaintiff's subjective complaints.

Next, the ALJ found that Dr. de Beixedon's repeated treatment advice that plaintiff exercise and lose weight was inconsistent with his statement that plaintiff "is barely able to get up from an armchair." [AR at 28, quoting AR at 330.] An ALJ may properly reject a treating physician's opinion that is inconsistent with his treatment notes. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); see also Morgan, 169 F.3d at 602-03 (a medical report's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion); Matney, 981 F.2d at 1020 (inconsistencies in a physician's opinion represents a specific and legitimate reason for rejecting it); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the physician's own treatment notes). As discussed above, Dr. de Beixedon repeatedly advised plaintiff to exercise, and even stated in his treatment notes that plaintiff should "stop l[y]ing in [the] chair all day." [AR at 204, 337, 341, 342.] This clear inconsistency between Dr. de Beixedon's treatment notes and his opinions regarding plaintiff's limitations was a specific and legitimate reason for rejecting those opinions.

11

1  Because the ALJ provided specific and legitimate reasons supported by substantial
2  evidence for rejecting Dr. de Beixedon's opinions, he was entitled to adopt Dr. Enriquez's
3  December 2003 opinion over Dr. de Beixedon's opinions.[5] See Magallanes v. Bowen, 881 F.2d
4  747, 751 (9th Cir. 1989); Batson, 359 F.3d at 1195. Remand is not warranted on this issue.

**C.    PAST RELEVANT WORK**

At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past relevant work. Lester, 81 F.3d at 828, n.5; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Plaintiff has the burden of establishing that he is incapable of performing his past relevant work. 20 C.F.R. §§ 404.1512, 416.912; Barnhart v. Thomas, 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether plaintiff can return to his past relevant work "either as actually performed or as generally performed in the national economy." Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002); see Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). A claimant is typically the primary source for determining how a job was actually performed. SSR 82-62. But when determining how a job is generally performed, the ALJ can rely on the descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational expert. See id.; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). To properly rely on the DOT in finding that plaintiff is able to perform his past work as generally performed despite an apparent contradiction with the DOT's description and the plaintiff's noted limitations, "the ALJ must definitively explain this deviation" (Pinto, 249 F.3d at 847), and "the record must contain 'persuasive evidence to support [it].'" Id. at 846 (quoting Johnson, 60 F.3d at 1435).

On September 11, 2002, examining physician Dr. Ernest Bagner performed a Complete Psychiatric Evaluation of plaintiff in which he diagnosed plaintiff with depressive disorder not

---

[5] To the extent plaintiff contends that the ALJ erred in accepting Dr. Enriquez's 2003 findings rather than the more limited restrictions provided in her 2002 Consultation, this contention fails because an ALJ may afford more weight to a physician's more recent medical findings. See Lester, 81 F.3d at 833.

12

otherwise specified and found, among other things, that plaintiff could perform serial threes and attempt serial sevens; "would have no limitations interacting with a supervisor, peers, and the public and completing simple tasks[; but] ... would have mild limitations handling the normal stresses at work, maintaining concentration and attention, completing complex tasks, and completing a normal work week without interruption." [AR at 285-88.] On October 21, 2002, nonexamining physician Dr. Melvin Morgan completed a Psychiatric Review Technique in which he opined, based on Dr. Bagner's Evaluation, that plaintiff "has no significant work-related [mental] impairments." [AR at 299-312.]

In the decision, the ALJ summarized Dr. Bagner's and Dr. Morgan's findings and adopted Dr. Morgan's opinion that plaintiff has "no significant work-related mental impairments." [AR at 30.] The ALJ did conclude, however, that plaintiff has nonsevere depression that, when considered in combination with other impairments, is severe [AR at 23, 33], and that he "has mild [mental] limitations with attention, concentration, and pace." [AR at 30.] The ALJ did not expressly reject Dr. Bagner's findings [see id.], did not include any mental limitations in his RFC determination [see AR at 32-33], and did not state how plaintiff's mental limitations impact his ability to perform his past relevant work as generally performed according to the DOT. [See id.] The ALJ relied on the vocational expert's testimony that plaintiff's past relevant work is defined under the DOT as that of a "Photo Engineer Printer" (DOT No. 971.381-034).[6] [AR at 32.] After considering plaintiff's testimony about how he actually performed his past work, considering plaintiff's RFC, and "carefully review[ing] the description of [his] occupation in the [DOT]," the ALJ concluded that plaintiff "can perform his past relevant work as it is generally performed." [AR at 32.]

Plaintiff contends that the ALJ erred in concluding that he can perform his past relevant work without addressing "whether he could perform highly skilled and technical work in light of a depressive disorder that causes mild impact on his functioning." [JS at 5.] Specifically, plaintiff argues that the work of a photoengraving printer as defined in the DOT has a specific vocational

---

[6] DOT No. 971.381-034 is actually entitled "Photoengraving Printer." This is also how the vocational expert referred to plaintiff's past work at the hearing. [See AR at 428.]

preparation ("SVP") level of 8,[7] requiring skills that may be incompatible with plaintiff's mental limitations, and that the ALJ erroneously failed to consider this potential incompatibility in his step-four analysis. [JS at 5-6.] The Court agrees.

The ALJ must consider the combined effects of all impairments, including those found to be nonsevere, when determining a claimant's disability status. See 42 U.S.C. § 423(d)(2)(B). "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity" to warrant benefits, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner ... does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process." Id. In the decision, the ALJ recognized that although he found plaintiff's "depressive disorder is not severe, ... since the condition is medically determinable, ... [he was required to] consider its effects on [plaintiff's] ability to work." [AR at 22, citing 20 C.F.R. § 404.1545(e).] However, in concluding that plaintiff can do his past work as defined in the DOT, the ALJ failed to consider the combined effects of all of plaintiff's impairments -- including his nonsevere depression and his limitations with concentration and attention. [See AR at 23, 30, 32-33.] This was error. Id.; SSR 85-28 (ALJ must consider the combined effect of all impairments on a claimant's ability to work); see, e.g., Bartlett v. Astrue, 2010 WL 1540956, at *2 (C.D. Cal. April 14, 2010) (ALJ erred in concluding that plaintiff could perform past relevant work without detailing how he could handle the job's mental and physical demands despite his limitations). Moreover, since the ALJ did not include Dr. Bagner's assessment of plaintiff's mental limitations in the RFC determination, or consider his findings at step four, it appears that he implicitly rejected these limitations. This too was error. Implicit reasons for rejecting an examining physician's findings are improper because they are neither clear nor convincing. Cotter v. Harris,

---

[7] The DOT defines SVP level "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level) to 9 (the highest level). Id.

642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).[8]

Of particular significance to the disability determination are the ALJ's and Dr. Bagner's conclusions that plaintiff has limitations with concentration and attention and Dr. Bagner's opinion that plaintiff also has limitations with performing complex tasks. "Using the skill level definitions in 20 C.F.R. [sections] 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, available at 2000 WL 1898704. Among other requirements for each level of work, unskilled work "needs little or no judgment;" semi-skilled work "may require alertness and close attention" and skills that are "more complex than unskilled work," but not as complex as skilled work duties; and skilled work requires "judgment to determine the machine and manual operations" and may require "dealing with people, facts, or figures or abstract ideas at a high level of complexity." See 20 C.F.R. §§ 404.1568(a)-(c), 416.968(a)-(c). As defined in the DOT, plaintiff's past relevant work has an SVP level of 8. See DOT No. 971.381-034. Thus, according to the regulations and the DOT, plaintiff's past work is a skilled position that may require a high degree of concentration, attention, and complex skill performance. 20 C.F.R. §§ 404.1568(c), 416.968(c), DOT No. 971.381-034. Because the ALJ found that plaintiff has mental limitations with attention and concentration, and Dr. Bagner's opinion (that was not properly rejected by the ALJ) indicates that plaintiff has limitations with complex task performance, there is an apparent discrepancy between plaintiff's limitations and the DOT's description of his past relevant work. However, the ALJ did not expressly explain this discrepancy in the decision or cite any evidence

---

[8] Further, to the extent the ALJ rejected Dr. Bagner's opinion in favor of Dr. Morgan's, this rejection was also erroneous because Dr. Morgan's findings were based on Dr. Bagner's clinical findings. See Turner v. Comm'r of Soc. Sec., __ F.3d __, 2010 WL 2991383, at * 8 (9th Cir. 2010) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.") (quoting Lester, 81 F.3d at 831).

supporting his deviation from the DOT.  This constitutes error.  See Pinto, 249 F.3d at 845-47.  Remand is therefore warranted on this issue.[9]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate in order for the ALJ to reconsider Dr. Bagner's findings as they relate to plaintiff's ability to perform his past relevant work.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 17, 2010

                                                 /s/ Paul L. Abrams
                                                 PAUL L. ABRAMS
                                          UNITED STATES MAGISTRATE JUDGE

---

[9] As the Court finds remand warranted, the Court exercises its discretion not to address plaintiff's remaining contention of error regarding the ALJ's step-four evaluation.  [See JS at 7-8.]